**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**William Howard WILGUS, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 25, 2009.

Filed June 26, 2009.

James P. Barker, Asst. Dist. Atty., Harrisburg, for Com., appellant.

Dana M. Wucinski, Public Defender, Harrisburg, for appellee.

BEFORE: ALLEN, CLELAND AND FITZGERALD *, JJ.

OPINION BY CLELAND, J.:

¶ 1 We are called on to decide whether the Legislature, in requiring a Megan's Law offender to register his "residence," included within the requirement the circumstances of this case in which the defendant is a homeless and transient person.

¶ 2 The defendant William Howard Wilgus (Wilgus) was released from prison and, after being turned away from various housing programs, lived on the streets of downtown Harrisburg for 30 days before being arrested for not registering his "residence" as required by Megan's Law. He was convicted in a non-jury trial, but the trial judge set aside his conviction and dismissed the charges. The trial judge concluded Wilgus did not have a "residence" to register and, therefore, had not violated Megan's Law.

¶ 3 We conclude the Legislature could have drafted the Megan's Law registration requirement to require a homeless and transient person to register, but it did not, and, consequently, we agree the conviction must be set aside.

¶ 4 The trial court granted Wilgus an arrest of judgment of his conviction for failure to comply with the registration requirements under Pennsylvania's Megan's Law [1] requiring him to inform the Pennsylvania State Police of his current, intended or change in residence.[2] The Commonwealth appealed.

¶ 5 This is a case of first impression in which, to assess the sufficiency of the Commonwealth's evidence, we must first

---

* Former Justice specially assigned to Superior Court.

1. 42 Pa.C.S.A. §§ 9791–9799.9.

2. 42 Pa.C.S.A. § 9795.2.

determine the meaning of the word "residence" as intended by the Legislature and then resolve whether a person without a fixed place of habitation or abode has acquired or can acquire a "residence" such that he must register it under the Megan's Law.

¶ 6 On March 14, 1998, following Wilgus's conviction of aggravated indecent assault, a second-degree felony,[3] the trial court sentenced Wilgus to five years' to life incarceration, found him to be a sexually violent predator, and ordered him to comply with the Megan's Law registration requirements. Trial Court Order, 3/14/98, at 1–2. On November 4, 1998, this Court vacated the sentence and remanded for sentencing without application of the Megan's Law registration requirements. *Commonwealth v. Wilgus*, 734 A.2d 441 (Pa.Super.1998). On January 29, 1999, the trial court re-sentenced Wilgus to 5 years' to 10 years' incarceration. On April 23, 2007, Wilgus was released from prison, but since he was incarcerated at the time the 2000 revisions to Megan's Law became effective, he had to comply with the registration requirements. *See* §§ 9795.1 and 9795.2. On May 20, 2007, the State Police arrested and charged him with failure during the period since release to register his current or new residence address, to verify his address, and to provide accurate information.[4] On January 18, 2008, the trial court, sitting without a jury, found Wilgus guilty of the first two charges but acquitted on the third. On May 27, 2008, however, the trial court granted Wilgus's post-trial motion for arrest of judgment and dismissed the charges against him. Trial Court Order, 5/27/08, at 1.

¶ 7 The Commonwealth filed a timely appeal raising a question of first impression: Whether the trial court erred in granting the post-trial motion for an arrest of judgment on the ground the evidence was insufficient to support the conviction of a *homeless person* for failing to register and verify his current or intended residences.

¶ 8 When released from prison on April 23, a friend drove Wilgus to the Bethesda Mission, a homeless shelter in Harrisburg. He remained there from his late afternoon arrival until departing the morning of April 25 after he was informed of the Mission's policy against housing Megan's Law registrants. N.T. Trial, 1/23/08, at 12, 21. Wilgus next went to 1708 Market St., in Harrisburg, which is the address he had registered before his parole. *Id.* at 12. Because there were no apartments at this location, Wilgus next tried to find housing at a Salvation Army shelter for drug and alcohol addicts but there was no space available. *Id.* at 12–13. He then tried the Daily Bread, a soup kitchen in the Boyd Building of The Pine Street Presbyterian Church, Harrisburg, but with no success. *Id.* at 13–14. He also tried a YMCA but there were no vacancies. *Id.* at 15. With only $50.00 in his pocket and believing he had nowhere else to go, Wilgus settled into a homeless existence in the Second and Market Street areas of Harrisburg, staying in alleyways by the courthouse and by a hospital, on benches, and the like. *Id.* at 16, 13. He never stayed in one place for more than 20 hours at a time. *Id.* at 16. He arranged to obtain a locker and to receive his mail at the Daily Bread; he also listed the Daily Bread as his mailing address to receive social security benefits. *Id.* at 13. Finally, four weeks later, on May 20, the State Police arrested him.

¶ 9 The standard of review is:

---

**3.** 18 Pa.C.S.A. § 3125(a).

**4.** 18 Pa.C.S.A. § 4915(a)(1), (2) and (3), respectively.

In reviewing an appeal from a trial court's granting of motion in arrest of judgment, we must determine whether the evidence offered by the Commonwealth was legally sufficient to support the verdict. To reach this determination, we accept all of the evidence and all reasonable inferences therefrom, upon which the fact-finder could have based the verdict; we can affirm the granting of a motion in arrest of judgment if, viewed in that manner, the evidence was nonetheless insufficient in law to find guilt beyond a reasonable doubt as to the crimes charged. We must view the evidence in the light most favorable to the Commonwealth.

*Commonwealth v. Nelson,* 245 Pa.Super. 33, 369 A.2d 279, 280 (1976).

¶ 10 The Commonwealth faces an insurmountable barrier because Megan's Law, as enacted by the Pennsylvania Legislature, simply does not cover the situation presented by a homeless person without a fixed place of habitation of some degree of permanence. "Residence" is defined in the statute as "[a] location where an individual resides or is domiciled or intends to be domiciled for 30 consecutive days or more during a calendar year." 42 Pa.C.S.A. § 9792.

¶ 11 This case is singularly one of statutory construction that is all too familiar:

[As set forth in the Statutory Construction Act, 1 Pa.C.S.A. § 1921(a),] "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly"[ ][.] "Generally speaking, the best indication of legislative intent is the plain language of a statute." "Furthermore, in construing statutory language, '[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage ....'" (quoting 1 Pa.C.S. § 1903).

The Act further provides that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); ....

Under Section 1921(c) of the Statutory Construction Act, it is only when the words of a statute "are not explicit" that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent. Consistent with the Statutory Construction Act, this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity in the meaning of the words.

*Sternlicht v. Sternlicht,* 583 Pa. 149, 157–159, 876 A.2d 904, 909 (2005).

¶ 12 Megan's Law is remedial legislation intended to "protect the safety and general welfare of the people." *See* § 9791(b). Its "registration, notification, and counseling requirements [are] non-punitive" or remedial in character. *Commonwealth v. Wilson,* 589 Pa. 559, 570, 910 A.2d 10, 17 (2006). The remedial provisions of a statute, unlike its penal provisions, must be construed liberally. *See* 1 Pa.C.S.A. § 1928(c) ("All other provisions of a statute shall be liberally construed to effect their objects and to promote justice."). Our Supreme Court has distinguished remedial from penal provisions in the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1–201–9, when it held: "Section 1928 directs that although penal provisions are to be strictly construed, all others 'shall be liberally construed to effect their objects and to promote justice.' *Id.* s 1928(c). The legislative emphasis is on provisions, not statutes in their entirety." *Commonwealth v.*

*Monumental Properties, Inc.*, 459 Pa. 450, 461, 329 A.2d 812, 817 (1974). The Commonwealth Court followed the Supreme Court in construing the Public Official and Employee Ethics Act, 65 Pa.C.S.A. §§ 1101–1113 (formerly 65 P.S. §§ 401–409). The issue was whether Pennsylvania Turnpike Commissioners were "public employees" within the meaning of the Ethics Act. The Commonwealth Court stated:

> The petitioners contend that the entire Ethics Act must be narrowly construed because it contains penal provisions. While penal provisions of a statute must be strictly construed, other provisions should be liberally construed to effect their objectives and to promote justice. *See* 1 Pa.C.S. s 1928; *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 460–61, 329 A.2d 812, 817 (1974).

*Camiel v. State Ethics Commission*, 56 Pa.Cmwlth. 518, 425 A.2d 60, 62 n. 2 (1981).

■ ¶ 13 Although the Commonwealth argues § 9792's definition of "residence" is a broad definition designed to encompass transient and homeless persons, the argument stretches the common sense definition of "residence" to the breaking point. "Residence" is defined in Black's Law Dictionary in a very traditional sense: "2. The place where one actually lives ... 3. A house or other fixed abode; a dwelling." Black's Law Dictionary 1335 (8th Ed. 2004). The clear implication is that "residence" is a geographical location inhabited on a more than momentary or fleeting basis. Clearly, the statutory definition in § 9792 contemplates a physical "location" of some degree of permanence—in short, something akin to a traditional residence, but most definitely not a locale of one

day's duration or a mere mailing address as in the instant case.

¶ 14 Section 9792's definition of residence, by equating it to a location of "30 consecutive days or more," recognizes, of course, some degree of permanence is necessary to transform a place of habitat into a "residence."[5] That "residence" means a fixed and somewhat permanent location draws additional support from an underlying purpose of Megan's Law which is to afford protection to the public and specifically to a Megan's Law registrant's neighbors. Section 9791(b) states:

> (b) Declaration of policy.—It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth **by providing for registration and community notification regarding sexually violent predators who** are about to be released from custody and **will live in or near their neighborhood.**

§ 9791(b) (emphasis added). Section 9798(a) requires the police to prepare a written notice containing a Megan's Law registrant's name, address, crime committed, fact of sexually violent predator status, and photo if available. The police must give the written notice to "[n]eighbors of the sexually violent predator." § 9798(b)(1) (emphasis added). Section 9798.1(c)(*l*)(iii) requires that information posted on the Internet about registrants must include "the *street address*, municipality, county and zip code of all residences." (emphasis added).

■ ¶ 15 These provisions breathe meaning into "residence" as a fixed geographical location within a neighborhood whose residents are entitled to notice and protection. If a homeless person, as in

---

**5.** One would not seriously contend, for example, a hotel is a "residence" of a proverbial traveling salesman because he stays overnight; nor would one contend a parent's home is a "residence" of an adult child visiting over the holidays.

Wilgus's case, drifts from park bench to bus stop to alleyway on a daily basis, he will never acquire a fixed abode within a permanent neighborhood.[6]

¶ 16 Wilgus never established a fixed and somewhat permanent (even if defined as 30 or more days as set forth in § 9792) "residence." As such, he and others like him will fall through the cracks and escape Megan's Law sanctions until such time as the Legislature amends the statute.[7][8]

¶ 17 Pennsylvania is not the first state to confront the application of a Megan's Law registration requirement to a homeless person. In *Twine v. Maryland*, 395 Md. 539, 910 A.2d 1132 (2006), the Maryland Court of Appeals undertook a similar analysis and reached a result similar to ours. There the defendant, following his eviction from an apartment, became homeless over a five-month period until arrested for failing to register a change of residence. The Maryland statute used "the words 'residence' and 'address' interchangeably," even though, unlike our Pennsylvania stat- ute, it did not attempt a statutory definition of either term. *Id.* at 1137. The court framed the issue: "The question is one of statutory construction, and the sole question of statutory construction before us is whether [defendant] changed residences when he was evicted from the Sweetgum Circle residence in August of 2004 and became homeless as a result." *Id.* at 1138.[9]

¶ 18 The defendant argued "the evidence at trial was insufficient to support his conviction, as he 'could not register a change of residence ... because he had no residence to register.'" *Id.* at 1136. The Maryland court held:

> We hold that appellant did not change residences within the meaning of § 11-705(d) when he became homeless, because he did not acquire a new "residence" within the meaning of the statute. "Residence," as noted above, is used interchangeably with "address" in this statutory scheme. Because the ordinary meanings of "residence" and "ad-

---

**6.** The Commonwealth argues the Daily Bread became Wilgus's residence because he maintained a locker and mail pick-up at this location and listed it as his address to receive social security benefits. The argument is without merit for a number of reasons, not the least of which is that Wilgus did not maintain a place of abode there.

**7.** We note the state of Washington amended its statute to require those like Wilgus "who lack a fixed residence, to register and report changes in living situation." *Twine v. Maryland*, 395 Md. 539, 910 A.2d 1132, 1139 (2006). The amendment was the Legislature's response to *State v. Pickett*, 95 Wash. App. 475, 975 P.2d 584 (1999). *Twine*, 910 A.2d at 1139. The Washington Court of Appeals had held:

> The evidence is undisputed that Pickett was living on the streets, sometimes staying in parks in Everett and Seattle, sometimes on the sidewalks of downtown Seattle. Pickett's situation is not contemplated by the statute. Because ... 'residence address'

connote[s] some permanence or intent to return to a place, it is impossible for Pickett to comply with the statute as written

*Pickett*, 975 P.2d at 586–587.

**8.** We caution that not all "homeless persons" will escape registration requirements. There will be those persons, regarded as homeless, but who have temporary abodes, such as the home of a relative or friend or a shelter, and who, therefore, will be expected to register.

**9.** As in Wilgus's case, the defendant in *Twine* also challenged the Maryland statute "as unconstitutionally vague as applied to homeless persons because in the absence of a statutory definition of 'residence,' the sex offender registration statute 'does not provide clear notice to a person who becomes homeless on how to comply with'" the registration requirement. *Id.* at 1136, n. 3. Vacating the conviction on insufficiency of evidence grounds, the Maryland court declined to reach the constitutional issue. In Wilgus's case, we also find it unnecessary to reach the same constitutional issue.

dress" connote some degree of permanence or intent to return to a place, and appellant was homeless, he had not acquired a residence within the contemplation of the statute. The statute does not address how compliance can be achieved by a person in appellant's circumstances. *Id.* at 1138. Further, the Maryland court held:

We conclude, on the basis of the plain meaning of "residence" and "address," that the General Assembly did not intend the notification requirement in § 11–705(d) to apply to "homeless" persons.... Given the plain meanings of "residence" and "address," we conclude that a registrant has a "residence" within the meaning of § 11–705(d) only if that person has a fixed location at which the registrant is living, or one to which the registrant intends to return upon leaving it. *See* ... Webster's Third New International Dictionary 24–25, 1931 (1963) (defining "address" as "the designation of a place ... where a person or organization may be found or communicated with," and defining "residence" as "a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit"); Webster's New International Dictionary 2119 (2d ed. 1950) (defining "residence" as the "act or fact of abiding or dwelling in a place for some time").

*Id.* at 1140.

¶ 19 In conclusion, we affirm the trial court's arrest of judgment on the basis of insufficiency of evidence. Because Wilgus's homeless existence precluded the possibility of a residence, or fixed place of habitation or abode, we are constrained to hold Wilgus was without a "residence" to register, change or verify within the meaning of Pennsylvania's Megan's Law. The Legislature may well consider amending the statute to address the status of homeless offenders within the registration requirements of Megan's Law.

¶ 20 Affirmed.