**Robert ZIMMERMAN, Appellant**

v.

**HARRISBURG FUDD I, L.P., Appellee.**

Superior Court of Pennsylvania.

Argued June 10, 2009.

Filed Oct. 19, 2009.

the direct liability claim against Dr. Prendergast.

Jason A. Copley, Harrisburg, for appellant.

·Jordan B. Goldberg, Cherry Hill, N.J., for appellee.

BEFORE: ALLEN, FREEDBERG and CLELAND, JJ.

OPINION BY CLELAND, J.:

¶ 1 We are asked to decide whether a contractor who has obtained a judgment against an owner under the Contractor and Subcontractor Payment Act may recover post-judgment interest and penalties, as well as attorney's fees and expenses incurred to collect the money owed. We hold he can.

¶ 2 Appellant Robert W. Zimmerman (Zimmerman) appeals the order denying his motion to recover from Appellee Harrisburg Fudd I, LLC (Fudd) the statutory interest, penalty, and attorney fees and expenses available to building contractors when project owners have violated the prompt payment provisions of the Contractor and Subcontractor Payment Act (CASPA).[1] For reasons that follow, we vacate the order and remand for proceedings consistent with this opinion.

¶ 3 In April 2005, Zimmerman entered into a contract with Fudd for the installation of floor and wall improvements for a new restaurant Fudd was building. Following completion of the job, Zimmerman submitted his invoice for $10,108.70 on June 25, 2005. In October 2005, because Fudd had failed to pay him, Zimmerman, invoking CASPA, initiated a breach-of-contract action. On September 19, 2006, the day scheduled for hearing before a board of arbitrators, the parties agreed to the board's entry of a stipulated award in favor of Zimmerman for $21,673.99, consisting of the $10,108.70 contract claim plus $11,565.29 of statutory interest, penalty, and attorney fees warranted by CASPA. Report and Award of Arbitrators, 9/19/06, at 1.[2] On November 2, 2006, Zimmerman entered the arbitration award as a judgment.[3]

---

1. 73 P.S. §§ 501–516.

2. Although the Report and Award of Arbitrators does not recite its award was based on the parties' stipulation, the parties themselves concede the point in their appellate briefs. Appellee's Brief at 2; Appellant's Brief at 3.

3. Fudd mischaracterizes the compulsory arbitration proceeding in this case as a common law arbitration governed by 42 Pa.C.S.A. § 7341 in which a decision "is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or

¶ 4 In December 2006, Zimmerman executed on his judgment by garnisheeing Fudd's bank account with Citizens Bank. Fudd filed a claim for exemption from execution, which, on March 12, 2007, the trial court denied. On the same day, Fudd filed an Emergency Motion to Stay Execution, again arguing the bank account qualified for an exemption. On March 13, Zimmerman entered judgment against Citizens Bank on its answer to interrogatories. On March 26, the trial court denied the Emergency Motion without opinion. Trial Court Order, 3/26/07. In its subsequent Pa.R.A.P. 1925 opinion the trial court explained the bank account was neither exempt under Pa.R.C.P. 3123.1 (Claim for Exemption or Immunity of Property. Prompt Hearing) nor exempt as subject to a perfected Uniform Commercial Code security interest held by a secured creditor of Fudd's. Trial Court Memorandum Opinion, 6/27/07, at 3–5. In addition, it held Fudd lacked standing to assert the secured creditor's lien priority rights, if any, to the bank account. *Id.* at 3–4.

¶ 5 On April 3, Fudd appealed the denial of its Emergency Motion. On April 6, Citizens Bank paid Zimmerman. One year later, on April 28, 2008, the Superior Court affirmed the trial court's order on the two exemption issues but did not address the standing issue.[4] No. 588 MDA 2007, *supra* at 4–6.

¶ 6 Two months later, on June 25, 2008, pursuant to CASPA, Zimmerman filed a motion with the trial court to recover from Fudd statutory interest from September 20, 2006 (the day after the arbitration award) to the date of the April 6, 2007 Citizens Bank payment, penalty for the same period, and attorney fees and expenses incurred in the post-award proceedings described above. His claim consisted of $663.80 of interest at the statutory rate of 1% per month, $663.80 of penalty at the same rate, $17,774 in attorney fees, and $1,214.25 in expenses. On October 13, 2008, without hearing, findings or opinion, the trial court denied Zimmerman's motion. On November 10, 2008, Zimmerman filed the appeal now before us.

¶ 7 Our standard of review is "whether the trial court palpably abused its discretion." *The Pietrini Corporation v. Agate Construction Co., Inc.*, 901 A.2d 1050, 1053 (Pa.Super.2006).

¶ 8 This case is governed by CASPA, a comprehensive statute enacted in 1994 to cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors. "The underlying purpose of [CASPA] is to protect contractors and subcontractors ... [and] to encourage fair dealing among parties to a construction

---

other irregularity caused the rendition of an unjust, inequitable or unconscionable award." 42 Pa.C.S.A. § 7341; Appellee's Brief at 6–13. The present case was, instead, a civil case originating in magisterial district court, appealed by Fudd, and then tried under the compulsory arbitration rules enabled by 42 Pa.C.S.A. § 7361, implemented by Pa.R.C.P. 1301–1314, for small claims not to exceed $50,000 in amount. *See also* Dauphin County R.C.P. 1301—1308 that deflect civil actions from bench or jury trial to compulsory arbitration before three-attorney boards of arbi-

tration when the amount in controversy is within the jurisdictional limits set by Dauphin County Rule 1301 (and, of course, not to exceed § 7361(b)(2)'s $50,000 ceiling).

4.  The Superior Court noted Fudd's admission in its appellate brief that its claim for exemption "was ineffective as it did not meet the specific allowed exemptions set forth in in Pa.R.C.P. 3123.1." No. 588 MDA 2007 (unpublished memorandum at 2) (Pa.Super. filed April 28, 2008).

contract." *Ruthrauff, Inc. v. Ravin, Inc.*, 914 A.2d 880, 890 (Pa.Super.2006). The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. Under circumstances prescribed in the statute, interest, penalty, attorney fees and litigation expenses may be imposed on an owner, contractor or subcontractor who fails to make payment to a contractor or subcontractor in compliance with the statute.[5]

■■ ¶ 9 Our standard in interpreting a statute is well established:

> [W]hen determining the meaning of a statute, a court must construe the words of that statute according to their plain meaning. 1 Pa.C.S.A. § 1903(a); *Ludmer v. Nernberg*, 699 A.2d 764, 765 (Pa.Super.1997). When the words of a statute are [clear and free from all ambiguity], they are not to be disregarded under the pretext of pursuing the spirit of the statute. 1 Pa.C.S.A. § 1921(a); *Commonwealth v. Heberling*, 451 Pa.Super. 119, 678 A.2d 794, 795 (1996). It is only when the statute is unclear that the court may embark upon the task of ascertaining the intent of the legislature. *Id.* Absent a definition, statutes are presumed to employ words in their popular and plain everyday sense, and popular meanings of such words must prevail. *Centolanza v. Lehigh Valley Dairies, Inc.*, 540 Pa. 398, 406, 658 A.2d 336, 340 (1995); *Commonwealth v. Kelley*, 569 Pa. 179, 801 A.2d 551, 555 (2002).

*Ruthrauff, Inc.* 914 A.2d at 889–890 (quoting *Nippes v. Lucas*, 815 A.2d 648, 650 (Pa.Super.2003)) (bracketed words in original). "Moreover, issues involving statutory interpretation present questions of law for which our standard of review is de novo and our scope of review is plenary." *Id.* at 890 (citation omitted).

¶ 10 The CASPA provisions relevant to the present case are §§ 505 and 512. Section 505 addresses an owner's obligation to pay interest on past due invoices:

> **§ 505. Owner's payment obligations**
>
> **(a) Construction contract.**—The owner shall pay the contractor strictly in accordance with terms of the construction contract.
>
> . . . .
>
> **(c) Time for payment.**—Except as otherwise agreed by the parties, payment of interim and final invoices shall be due from the owner 20 days after the end of a billing period or 20 days after delivery of the invoice, whichever is later.
>
> **(d) Interest.**—Except as otherwise agreed by the parties, if any progress or final payment to a contractor is not paid within seven days of the due date established in subsection (c), the owner shall pay the contractor, beginning on the eighth day, interest at the rate of 1% per month or fraction of a month on the balance that is at the time due and owing.

■ ¶ 11 Because § 505(d) mandates the payment of statutory interest when, as here, payment is made after the 20–day

---

**5.** *See* the Pennsylvania Prompt Pay Act, 62 Pa.C.S.A. §§ 3931–3939, a chapter of the Commonwealth Procurement Code, 62 Pa. C.S.A. §§ 101–4604. The Pennsylvania Prompt Pay Act, applicable to Commonwealth agencies and many local government units, mirrors CASPA's purpose in the public contract sector with parallel regulations and sanctions. 62 Pa.C.S.A. §§ 3101–3102. "The

clear intent of the Prompt Pay Act is to level the playing field between contractors and subcontractors when they are working on public projects. As such, the Prompt Pay Act requires contractors on public projects to honor their contractual obligations and pay subcontractors for all items satisfactorily completed." *The Pietrini Corporation*, 901 A.2d at 1055.

deadline in § 505(c), we hold the trial court abused its discretion in denying statutory interest for the post-award period without first holding a hearing and making a finding Fudd's withholding of payment was a good faith withholding for a deficiency under § 506.[67] Absent good faith withholding, interest continues post-award at the statutory rate until payment.[8]

¶ 12 Section 512 governs the assessment of a penalty on late payments at a rate of 1% per month:

### § 512. Penalty and attorney fee

**(a) Penalty for failure to comply with act.**—If arbitration or litigation is commenced to recover payment due under this act and it is determined that an owner, contractor or subcontractor has failed to comply with the payment terms of this act, the arbitrator or court shall award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was wrongfully withheld. An amount shall not be deemed to have been wrongfully withheld to the extent it bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against whom the contractor or subcontractor is seeking to recover payment.

Zimmerman presents the question whether Fudd's withheld payment was "wrongful" under CASPA's prompt payment provisions. Because § 512(a) mandates the payment of statutory penalty when, as here, payment is made after the 20-day deadline in § 505(c), we hold the trial court abused its discretion when it did not award

---

**6.** We note our decision in *Ruthrauff, supra,* which conditioned the right to interest on retainages under CASPA § 509(d) on the contractor's "unreasonably" withholding acceptance of work or payment of retainage. *Id.* at 891. The present case does not involve retainages or § 509(d). Instead, it appears that the duty of *owners* to pay interest is controlled by § 505(d) (the owner shall pay the contractor ... interest at the rate of 1% per month or fraction of a month on the balance that is "at the time due and owing."). The only condition precedent to entitlement to interest would appear to be whether an owner's good faith withholding of payment for deficiency items under § 506 renders the disputed payment as not "at the time due and owning" within the meaning of § 505(d).

**7.** Because the parties stipulated to the entry of the arbitration award, Fudd is not precluded by the collateral estoppel doctrine from litigating the issue of his good faith withholding. *See McGill v. Southwark Realty Co.,* 828 A.2d 430, 434 n. 6 (Pa.Cmwlth.2003) (stating "This Court cited comment *e* of the Restatement in holding collateral estoppel inapplicable when an underlying judgment is entered by consent.") (internal citations omitted).

**8.** We hold § 505 is an exception to Judicial Code § 8101, 42 Pa.C.S.A. § 8101, which reads: "Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate...." The "legal rate" in Pennsylvania is 6%. 41 P.S. § 202. CASPA § 505, however, clearly mandates the inception and continuation of statutory interest **post-default until payment,** and, therefore, qualifies as an exception to § 8101. In contract litigation, we have construed similar language to warrant continuation of the contract rate of interest in the post-judgment period. In *Pittsburgh Const. Co. v. Griffith,* 834 A.2d 572, 593 (Pa.Super.2003), we held "The contract's explicit language—'shall bear interest at the rate of 18% per annum from the date such final [payment] was due until paid'—indicates the parties intended this increased rate to apply to both prejudgment and post-judgment interest calculations." In contrast, when the parties to a contract fail to specify a "rate **after the debt becomes due[,]** then[ ] the interest rate fixed by law attaches for the detention of the principal sum." *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa.Super. 14, 473 A.2d 584, 595 (1984). Moreover, because CASPA is a remedial statute, we must accord it a liberal construction "to effect [its] objects and to promote justice. 1 Pa.C.S.A. § 1928 (Rule of strict and liberal construction)." *Commonwealth v. Wilgus,* 975 A.2d 1183, 1186 (Pa.Super.2009).

the statutory penalty for the post-award period without first conducting a hearing and finding Fudd's withholding of payment was not "wrongful" under § 512(a).

¶ 13 Section 512(b) controls the entitlement of a contractor to attorney fees and expenses in connection with the parties' litigation:

**(b) Award of attorney fee and expenses.**—Notwithstanding any agreement to the contrary, the substantially prevailing party in any proceeding to recover any payment under this act shall be awarded a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses.

Because the board of arbitration made an award in his favor on his claim, Zimmerman is clearly the prevailing party in the litigation to obtain a judgment for his construction work.[9]

¶ 14 Whether Zimmerman was also the *substantially* prevailing party turns on the definition of "substantially." Although not binding on us, we, nonetheless, are persuaded by the analysis in *LBL Skysystems (USA), Inc. v. APG–America, Inc.*, 514 F.Supp.2d 704 (E.D.Pa.2007) where the District Court held a subcontractor, even though prevailing on its breach-of-contract counterclaim against the contractor, did not *substantially* prevail on its CASPA claim. The court held the contractor *rightfully* withheld over $4,000,000 because of its pending cost-to-complete claim against the subcontractor for over $5,000,000. The court held:

In this case, as in *Quinn Construction*, although [the subcontractor] recovered "a significant proportion of the damages" it sought in its CASPA claim, because the Court concluded that [the contractor] did not wrongfully withhold payments, [the subcontractor] was not the substantially prevailing party on the CASPA claim and it is not entitled to attorneys fees.

*Id.* at 713 (citing *Quinn Construction, Inc. v. RC Dolner LLC*, 187 Fed.Appx. 129 (3d Cir.2006)).[10] Stated differently, to qualify as a substantially prevailing party, the subcontractor in *LBL Skysystems* needed, not only to recover on its claim, but also to prove the contractor, without good faith reason, failed to comply with CASPA's mandate of prompt payment. *Id.*

¶ 15 Because the board of arbitrators awarded Zimmerman his *entire* claim plus CASPA interest, penalty and attorney fees, he was clearly the "substantially prevailing party" as a matter of law. The trial court abused its discretion in denying the motion for attorney fees and expenses

---

**9.** In *Zavatchen v. RHF Holdings, Inc.*, 907 A.2d 607 (Pa.Super.2006), *appeal denied*, 591 Pa. 685, 917 A.2d 315 (2007), we held:

[a] 'prevailing party' is commonly defined as 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.' While this definition encompasses those situations where a party receives less relief than was sought or even nominal relief, its application is still limited to those circumstances where the fact finder declares a winner and the court enters judgment in that party's favor.

*Id.* at 610 (quoting *Profit Wize Mktg. v. Wiest*, 812 A.2d 1270, 1275–276 (Pa.Super.2002) (internal citations omitted)).

**10.** Interestingly, the contractor also claimed the status of the "substantially prevailing party," because it recovered approximately $1,500,000, the excess of the award on its cost-to-complete claim over the subcontractor's offsetting counterclaim award. The court held the contractor, nevertheless, did not "prevail" on the counterclaim because it was found liable for over $4,000,000 of it. The contractor's *net* recovery was due to its $5,000,000 plus award on its cost-to-complete claim. *Id.* at 711–712.

for the post-award period. We remand with instruction the trial court conduct a hearing to determine "a reasonable attorney fee" and expenses.

¶ 16 On remand, the trial court should abide by our following discussion of a question of first impression presented in this case: whether Zimmerman's attorney fees and expenses incurred in the post-award collection proceedings, including Fudd's Superior Court appeal on its exemption claim as well as the present appeal, are eligible for recovery under § 512(b).

¶ 17 We will analyze the issue by dividing it into two parts. The first part (*"Collection-of-Judgment* Fees") concerns those attorney fees and expenses incurred in effort to collect the award and includes the Superior Court appeal on the exemption issue. The second part (*"Collection-of-Fees* Fees") concerns those fees and expenses incurred to establish the entitlement to and collection of the *Collection-of-Judgment* Fees and the fees and expenses thus incurred in the process.

### Collection-of-Judgment Fees

¶ 18 The issue is whether § 512(b) permits a substantially prevailing party to collect post-award fees and costs. In *Eagle I. Electrical, Inc. v. J.J. Hilferty & Son Builders, Inc.*, 578 Pa. 429, 853 A.2d 1009 (2004), Justice Baer noted our appellate courts have yet to address this issue. He dissented from a *per curiam* order denying a subcontractor's petition for allowance of appeal, treated as an Application for Relief under Pa.R.A.P. 123. The contractor had appealed the trial court's award of attorney fees, penalties and interest to the subcontractor. Following the Superior Court's affirmance, the subcontractor filed an application with the Superior Court for additional attorney fees attributable to the contractor's unsuccessful appeal. Justice

Baer (with Justice Saylor joining) lamented:

> Because it is unapparent that the plain language of Section 512(b) of the Pennsylvania Contractor and Subcontractor Payment Act (CASPA), 73 P.S. § 512(b), necessarily precludes an award of attorney's fees or expenses incurred in the context of appellate proceedings, I believe this Court should retain jurisdiction, grant the Application for Relief and remand this matter to the Superior Court with direction that it issue an opinion on the merits of the attorney's fee claim.
>
> . . . .
>
> I believe the question of CASPA's applicability to appellate counsel fees and expenses is important and has not been addressed by the Pennsylvania appellate courts. Thus, I cannot join in the Court's *per curiam* Order affirming the Superior Court's disposition.

*Id.* at 429 and 431, 853 A.2d at 1009–1010.

¶ 19 Most significantly, Justice Baer added:

> The Superior Court's order denying [subcontractor's] application for costs and this Court's Order affirming such action could be construed to signify the Superior Court's and this Court's view that the language of Section 512(b) of CASPA precludes an award of attorney fees or expenses by an appellate court for costs incurred during appellate proceedings. Attorney's fees for appellate litigation are neither specifically mandated nor proscribed by Section 512(b). The Legislature merely provides that "the substantially prevailing party **in any proceeding to recover any payment under this act** shall be awarded a reasonable attorney fee in the amount to be determined by the court or arbitrator...." **This language appears broad enough to encompass proceedings in**

**appellate courts,** and an award by such a court. *Id.* at 430, 853 A.2d at 1010. We agree the language "any proceeding to recover any payment under this act" encompasses any phase of the litigation, including the collection-of-judgment phase. We hold that § 512(b)'s award of attorney fees and expenses incurred in order to *collect* the judgment are literally encompassed within § 512(b) because these fees and expenses are incurred in "recover[ing] any payment [due] under this act."

¶ 20 Our construction of § 512(b) recognizes how Pyrrhic a victory would be for a contractor who, to collect his just due, is required to expend his "paper recovery" on attorney fees necessitated by a defendant's obstructionist tactics. CASPA endeavors to make a contractor whole when failure to be paid promptly forces him to resort to litigation to collect a just debt. CASPA has introduced disincentives, such as 1% monthly interest, 1% monthly penalties, and reimbursement of attorney fees, into the financial relationships of participants in the construction industry.[11]

¶ 21 Fudd argues the award of attorney fees and expenses is discretionary with the court. Fudd, however, ignores the clear mandate of § 512(b) that a substantially prevailing party "**shall be awarded** a reasonable attorney fee in an amount to be determined by the court or arbitrator, to-

gether with expenses." § 512(b) (emphasis added). More precisely, "Use of the word 'shall' in *section 512(b)* can only be interpreted as a legislative mandate, and where the trial court has determined that one party is 'substantially prevailing,' the award of attorney's fees must follow." *Imperial Excavating and Paving, LLC v. Rizzetto Construction Management, Inc.,* 935 A.2d 557, 564 (Pa.Super.2007).[12]

*Collection–of–Fees Fees*

¶ 22 The remaining question concerning the allowance of *Collection–of–Fees* Fees under CASPA is, in reality, no different than the question concerning *Collection–of–Judgment* Fees. CASPA's underlying objective of making an unpaid contractor whole by awarding him his litigation costs when he is the substantially prevailing party is compromised and, indeed, can be gutted, when he is subjected to expensive litigation costs, including those incurred in the collection-of-fees phase. Because § 512(b) permits an award of only "a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses[,]" there remain safeguards against excessive attorney fee claims.

¶ 23 Accordingly, since Zimmerman was the substantially prevailing party, the trial court shall conduct a hearing to determine a "reasonable attorney fee" and expenses

---

**11.** *The Pietrini Corporation, supra* illustrates, in the public project sector, the kind of industry practice the Pennsylvania Prompt Pay Act, 62 Pa.C.S.A. §§ 3931–3939, targeted with disincentives similar to those in CASPA. There, a contractor withheld $101,900 of undisputed monies due its subcontractor in order to leverage the subcontractor into settling on other claims. *Id.* at 1053. We explained:

> The Prompt Pay Act was intended to negate just such "harsh negotiating tactics" in public projects. Viewed in this light, the conduct in issue here constituted coercion, not negotiation. Clearly, Agate's tactic sup-

ported a finding of vexatious behavior as the intended effect was to compel Pietrini, by denying it money undisputedly due under the subcontract, into surrendering legitimate avenues to pursue other legal and meritorious claims.

*Id.* at 1054.

**12.** We also pointed out "the issue of whether any party to a lawsuit *substantially prevailed* is left to the trial court's discretion." *Id.* (quoting *Zavatchen, supra* at 610) (emphasis in *Zavatchen*).

for the collection-of-judgment and the collection-of-fees periods.

¶ 24 In conclusion, for the foregoing reasons, we vacate the trial court order denying CASPA interest, penalty, and attorney fees and expenses.

¶ 25 Order vacated.   Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.