**WALLER CORPORATION, Appellee**

v.

**WARREN PLAZA, INC., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 7, 2014.
Filed June 30, 2014.

John A. Bacharach, Pittsburgh, for appellant.

Marcia L.T. DePaula, Canonsburg, for appellee.

BEFORE: BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

OPINION BY LAZARUS, J.

Warren Plaza, Inc. (Warren) appeals from the judgment entered in the Court of Common Pleas of Washington County, following a verdict in favor of Appellee, Waller Corporation (Waller). After careful review, we affirm.

On appeal, Warren presents the following issues for our consideration:

(1) Whether the trial court failed to apply hornbook contract law requiring the court to interpret the contract within the four corners of the document by holding that the contractor could unilaterally modify the contract despite the clear and comprehensive written contract provisions which required written amendment to the contract only by written agreement of the parties, the architect and prior written approval by a federal agency.

(2) Whether the trial court's opinion and its post-trial verdict reversing a portion thereof are wholly unsupported by any facts of record and at odds with legal precedent thus requiring the verdict to be reversed?

(3) No attorney fees should be awarded to the Plaintiff where Warren declined to pay based on the good faith belief that it was not obligated to pay under the contract's express language.

█ In November 2000, Warren, a Pennsylvania non-profit entity providing affordable, handicap-accessible housing, hired Waller as a general contractor to construct a fifteen-unit apartment building.[1] The project was valued at

---

1. An architectural firm, Apostolou Associates, Inc. (Architect), was hired to design the project. The Architect administered the contract and served as Warren's representative. It was also authorized to act on behalf of Warren to the extent provided in the contract documents. Specifically, it was required to keep Warren informed about the progress of the project, endeavor to guard Warren against deficiencies in the work, and determine whether work was performed in accordance with the contract.

$1,304,899.00 and was funded 75% by the U.S. Department of Housing and Urban Development (HUD) and 25% by Warren through grants and private funding. The project contract was prepared on a standard HUD form and incorporated general conditions promulgated by the American Institute of Architects (AIA). HUD contractual provisions took precedence over the AIA general conditions.

Changes to the project were memorialized in three ways: (1) a change order, representing an agreement between Waller and the Architect regarding the work to be accomplished, the additional cost incurred, and the time required; (2) a construction change directive, representing an agreement by Waller and the Architect, directing a change in the work without any agreement with Waller as to cost or time; and, (3) an order for a minor change, issued by the Architect alone and requiring no further cost or time. However, all modifications to the building design or orders for extra work required prior written approval of HUD.

During the project, at least eight change orders were memorialized. Two of those change orders, which form the basis for the underlying contract dispute, concern a change to the floors of the building and the relocation of the unit water heaters. Warren never signed either of these change orders, did not submit the change orders to HUD for approval, and, ultimately, refused to pay the costs associated with the changes.

When Warren failed to pay Waller for the invoices on these two change orders, Waller filed the underlying breach of contract action seeking repayment for the un-

paid invoices as well as penalties, interest and attorney's fees under Pennsylvania's Contractor and Subcontractor Payment Act (CSPA), 73 P.S. §§ 501–516.

After a non-jury trial, a verdict of $69,904 was entered in Waller's favor,[2] which included accrued interest. The parties filed post-trial motions; all motions were denied except for Waller's motion to modify the award of attorney's fees. Specifically, the court modified its original award of attorney's fees from $33,000 to $78,071, based upon the following findings of fact: (1) Waller was the substantially prevailing party; (2) the court's original award was arbitrary; and (3) Warren was responsible for the large and disproportionate fee for failing to resolve the dispute with Waller in a timely manner. Post–Trial Opinion and Order, 10/18/12, at 4–5.

Because the changes made to the project were necessary, had been approved by Architect, and the price charged was reasonable, we find that the trial court properly entered a verdict in Waller's favor. We rely upon the well-written opinions, authored by Judge Emery, to affirm the verdict. See Post–Trial Opinion and Order, 10/18/12; Opinion and Verdict, 3/2/12; Pa.R.A.P. 1925(a) Opinion, 3/9/13.[3]

With regard to Warren's final issue on appeal concerning the award of attorney's fees under CSPA, we also find it is meritless.

The relevant provision relating to the award of attorney's fees under the CSPA states:

> Notwithstanding any agreement to the contrary, the substantially prevailing party in any proceeding to recover any payment under this act shall be awarded

---

2. A breakdown of the verdict includes $23,470 in compensatory damages, $12,434 for interest and $33,000 in attorney's fees, that latter of which was modified.

3. We instruct the parties to attach copies of these decisions in the event of further proceedings.

a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses.

73 P.S. § 512(b). In addition, under the CSPA a party (owner, contractor, subcontractor) who has withheld payment *in bad faith* can be subjected to a 1% monthly penalty. 73 P.S. § 512(a).[4] Payments withheld by a contractor or other non-paying party under the CSPA, in good faith, are not considered to be "wrongfully withheld" within the meaning of section 512(a) for purposes of imposing a penalty. Finally, sections 506 and 511 of the CSPA allow owners and contractors to withhold payment for deficiency items,[5] so long as the withholding is based on good faith claims. 73 P.S. §§ 506, 511.

■■■■ Whether a substantially prevailing party shall be awarded attorney's fees, under the CSPA, is a matter left to the trial court's discretion. *Bridges PBT v. Chatta*, 821 A.2d 590 (Pa.Super.2003). On appeal, our standard of review is "whether the trial court palpably abused its discretion." *Zimmerman v. Harrisburg Fudd I, L.P.*, 984 A.2d 497 (Pa.Super.2009).

■■■■ The purpose of the CSPA is to protect contractors and subcontractors and to encourage fair dealing among parties to a construction contract. *Ruthrauff Inc. v. Ravin, Inc.*, 914 A.2d 880, 890 (Pa.Super.2006). Under the CSPA, a contractor who has performed under a contract with a party is entitled to payment from that party. 73 P.S. § 504. The CSPA provides rules and deadlines to ensure prompt payments under construction contracts, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. *Zimmerman, supra* at 501.

Instantly, the trial court declined to impose a penalty upon Warren under section 512(a), determining that Warren had a "good faith basis, although mistaken, to withhold payment." Opinion, 3/12/12, at 27. The court, however, did award Waller attorney's fees under section 512(b). Following the filing of post-trial motions by both parties, the court modified the original amount of attorney's fees awarded to Waller, from $33,000 to $78,071, based on evidence submitted by Waller showing the hours and hourly rates charged by its counsel for time spent for trial preparation and trial. *See* Post–Trial Opinion and Order, 10/17/12, § IIB, at 5. Specifically, the court found that: (1) Waller was a substantially prevailing party; (2) the court's original award was arbitrary; and (3) Warren was responsible for a large and disproportionate fee for failing to resolve the dispute with Waller in a timely manner. Opinion, 3/12/12, at 27.

Warren asserts that the record does not support the trial court's finding that Waller was the "substantially prevailing party"

---

4. Section 512(a) of CSPA states:
   (a) PENALTY FOR FAILURE TO COMPLY WITH ACT.—If arbitration or litigation is commenced to recover payment due under this act and it is determined that an owner, contractor or subcontractor has failed to comply with the payment terms of this act, the arbitrator or court shall award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was wrongfully withheld. An amount shall not be deemed to have been wrongfully withheld to the extent it bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against whom the contractor or subcontractor is seeking to recover payment.
   73 P.S. § 512(a) (emphasis added).

5. Deficiency items are defined under the CSPA as "work performed but which the owner, the contractor or the inspector will not certify as being completed according to the specifications of a construction contract." 73 P.S. § 502.

under section 512(b), and, therefore, was not justified in receiving reasonable attorney's fees under the CSPA. Specifically, Warren relies on *Zimmerman, supra,* to conclude that because Warren had a good faith reason for not paying Waller, the latter was not a "substantially prevailing party" under the CSPA, and, therefore was not entitled to attorney's fees. Based on a close reading of relevant cases and the unambiguous statutory language of section 512(b), this is an erroneous legal conclusion.

Instantly, there is no question that Warren prevailed below in the contract dispute; judgment was rendered in its favor. *Zavatchen v. RHF Holdings, Inc.,* 907 A.2d 607, 610 (Pa.Super.2006) ("prevailing party is commonly defined as 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded.' "). The issue, then, is whether Waller is considered a "substantially" prevailing party.

Warren extracts language from *Zimmerman, supra,* to maintain that in order to recover attorney's fees as a "substantially prevailing party" under section 512(b) of the CSPA, a claimant must also prove that the defendant withheld prompt payment *without good faith reason.* In *Zimmerman,* a plaintiff-subcontractor entered into a contract with the defendant, a contractor, to install floor and wall improvements in a new restaurant the subcontractor was building. *Zimmerman,* 984 A.2d at 499. The subcontractor sued the defendant for breach of contract, invoking CSPA, for failing to pay him after

he had completed the job. *Id.* Ultimately the parties agreed to a stipulated award in favor of the plaintiff-subcontractor for $21,673.99, representing $10,108.60 on the contract action, plus $11,565.29 in statutory interest, penalty and attorney's fees under the CSPA. On appeal, the subcontractor claimed that the trial court improperly denied him post-judgment interest and penalties, as well as post-judgment attorney's fees under CSPA. Our Court ultimately found that the award of attorney's fees and expenses incurred in order to collect a judgment is encompassed within section 512(b) "because these fees and expense are incurred in 'recover[ing] any payment [due] under this act.' " *Id.* at 505.

In determining whether Zimmerman was a "substantially" prevailing party for purposes of recovering section 512(b) attorney's fees, our Court found persuasive the following language from *LBL Skysystems (USA), Inc. v. APG–America, Inc.,* 514 F.Supp.2d 704 (E.D.Pa.2007):

> In this case, as in *Quinn Construction,* although [the subcontractor] recovered "a significant proportion of the damages" it sought in its CASPA claim, because the Court concluded that [the contractor] did not wrongfully withhold payments, [the subcontractor] was not the substantially prevailing party on the CASPA claim and it is not entitled to attorney's fees. *Id.* at 712 (citing *Quinn Construction, Inc. v. R.C. Dolner LLC,* 187 Fed.Appx. 129 (3d Cir.2006)).

*Zimmerman,* 984 A.2d at 503.[6] Despite this quoted language, a close reading of

---

**6.** While *Zimmerman* relied on the above-quoted language to set forth a good faith exception under section 512(b), it failed to also acknowledge the following language from *LBL:*

> First, with respect to APG's claim for interest under § 507(d) and penalty under § 512(a) [of the CSPA], the Court determines that the finding in the Court's Liabili-

ty Opinion that LBL had not wrongfully withheld funds, forecloses APG's claim. "Because payment was withheld in good faith, it was not wrongfully withheld under § 512(a), and was thus not subject to the interest and penalty provisions of [CSPA]." *Quinn Construction, Inc. v. RC Dolner LLC,* 187 Fed.Appx. 129, 131 (3d Cir.2006).

*Quinn* reveals that *LBL* does not stand for the legal proposition that a good faith exception exists under section 512(b) of CSPA.

In *Quinn*, a subcontractor sued a contractor for failure to pay the full value of its work under a subcontract. *Id.* at 129. After trial, the court awarded the subcontractor-plaintiff $92,385 ($59,933 representing amount due for work performed and $40,452 representing 10% of the value of the contract that contractor-defendant was entitled to hold as "retainage"). *Id.* The court, however, determined that the plaintiff was not entitled to statutory interest, penalties or attorney's fees because the defendant had "acted in good faith[7] under the [P]CSPA and because neither party substantially prevailed." *Id.* In clarifying its holding, the Third Circuit noted that that district court properly applied the "plain language of the statute to the facts of this case and determined that because [the defendant] satisfied the good faith exception in the statute, [the plaintiff's] final payment was not 'wrongfully withheld' *or subject to the penalty provisions in the [P]CSPA.*" *Id.* (emphasis added). Notably, the *Quinn* court never referenced the good faith exception in relation to the award of attorney's fees under section 512(b). This omission was not an oversight, but a correct reading of the statutory language and federal and state cases.

The fact that a party withholds funds in good faith is relevant to a determination of whether a party is entitled to statutory interest and penalties under the CSPA, not attorney's fees. *See Quinn, supra* at 131 (holding that because defendant withheld payment in good faith, it was not wrongfully withheld under section 512(a), "and was thus not subject to the interest and penalty provisions of the [P]CSPA."). In fact, in *LBL*, the court concluded that LBL did not substantially prevail in the matter, for purposes of attorney's fees, because it "was found liable to APG for a significant proportion of the funds alleged to be owed," *id.* at 712, not because the opposing party acted in good faith. *See F.S.I., Inc. v. Viola Contrs*, 2003 U.S. Dist. LEXIS 1288 (E.D.Pa. Jan. 21, 2003) (sections 507 and 512(b) of CSPA provide for payment of interest and attorney's fees and costs and do not contain "good faith claim" exceptions; those sections provide that party is entitled to interest, fees and costs with respect to all payments found to be due under Act); *see also Moravian Associates, L.P. v. The Henderson Corp.*, 2008 WL 3562468, 2008 U.S. Dist. LEXIS 62260 (E.D.Pa.2008) (finding that contract manager was "substantially prevailing party" within meaning of section 512(b) of CSPA and entitled to attorney's fees because its defense in action against owner was necessary to secure payment under construction contract); *Imperial Excavating and Paving LLC v. Rizzetto Construction Management, Inc.*, 935 A.2d 557 (Pa.Super.2007) (where record fully supported trial court's finding that plaintiff-subcontractor entered into lawsuit to recover unpaid monies by defendant-contractor, plaintiff was "substantially prevailing party" under section 512(b) and entitled to attorney's fees).

Here, the trial court found that Warren withheld payment on the two change orders based on the assumption that Waller

---

*LBL*, 514 F.Supp.2d at 712–13 (emphasis added). Noticeably, the good faith exception is referenced here with regard to section 512(a) for purposes of imposing penalties, which is a correct interpretation of the exception under CSPA.

7. Specifically, the defendant withheld payment from the plaintiff because it disagreed with the subcontractor's final accounting and believed that the subcontractor may have been overpaid. *Id.* at 130.

and Architect would resolve the change order dispute without Waller having to pay for either of the changes. Moreover, the court factually found that Warren had a good faith basis to withhold payment, and, accordingly, declined to impose a penalty under section 512(a) of the CSPA. *See F.S.I., supra* at *7 ("section 512(a) specifies that a penalty is paid only on money 'wrongfully withheld' "). While an owner's good faith belief in withholding payment is certainly relevant to determining whether payment may be withheld for deficiency items under the statute, or whether interest and punitive damages under the CSPA are warranted, there is no statutory language to support such an exception for the award of attorney's fees under section 512(b). *See* 1 Pa.C.S.A. § 1903(a) (court must construe words of statute according to plain meaning).

To the extent that the analysis then centers upon whether Warren is a *substantially* prevailing party, the question is one left to the trial court's discretion based upon the evidence. *Chatta, supra.* On that point, the trial court was justified in finding that Warren was entitled to attorney's fees under section 512(b) due to the court's full award of compensatory damages demanded by Waller, the fact that "[t]he large and disproportionate [attorney] fee was due to the protracted time over which this case has lingered, which is largely due to the action of [Warren]," Post–Trial Motion Opinion, 10/18/12, at 3, and the court's finding that Warren's decision to withhold its consent on the change orders was not reasonable due to the project's time constraints and the design-related necessity[8] of the changes. *Id.* at 7.

Finally, with regard to whether the amount of fees awarded under section 512(b) is reasonable, the court based its decision on evidence submitted by Waller showing the number of hours billed and hourly rates charged by its counsel. *See Moravian Assoc., L.P. v. Henderson Corp.*, 2008 WL 3562468, at *14, 2008 U.S. Dist. LEXIS 62260, at *41 (E.D.Pa.2008) ("Prior to awarding attorney's fees, the court should possess 'sufficient information to determine the reasonableness of the hourly rate and the number of hours expended in defending the litigation.' "); *see also Ware v. U.S. Fidelity and Guaranty Co.*, 395 Pa.Super. 501, 577 A.2d 902, 906 (1990) (under express language of CSPA, determination of what is reasonable with respect to attorneys' fees under section 512(b) is to be made by court; under Pennsylvania common law, determination is within sound discretion of court). Warren has not produced anything to dispute that those fees were unreasonable based on the evidence presented by Waller's attorney. Therefore, we affirm the court's award of attorney' fees under section 512(b).

Judgment affirmed.

BENDER, P.J.E., files a Concurring and Dissenting Opinion.

## CONCURRING AND DISSENTING OPINION BY BENDER, P.J.E.

Respectfully, I dissent. I agree with the learned Majority that Appellant, Warren Plaza, Inc. is liable to Waller Corporation (Waller) for compensatory damages and interest based upon its breach of contract. However, in my view, the Majority errs in affirming the trial court's award of attorney fees.

---

8. Both the floor topping and water heater placement were originally designed to save Warren money, but turned out to be unworkable. Pa.R.A.P. 1925(a) Opinion, 4/9/13, at 4.

For example, the City of Pittsburgh would not issue an occupancy permit unless the hot water heater modifications were made. *Id.* at 5.

First, the Majority disregards the binding precedential value of *Zimmerman v. Harrisburg Fudd I, L.P.,* 984 A.2d 497 (Pa.Super.2009), opting instead to re-interpret the merely persuasive, federal authority upon which the *Zimmerman* panel based its decision. *See Commonwealth v. Hull,* 705 A.2d 911, 912 (Pa.Super.1998) ("It is beyond the power of a panel of the Superior Court to overrule a prior decision of the Superior Court"). In so doing, the Majority rejects the *Zimmerman* panel's determination that a *"substantially* prevailing party" must prove that a defendant withheld prompt payment without a good faith reason. *See Zimmerman,* 984 A.2d at 503 (relying upon the "good faith" requirement legislated in 73 P.S. § 512(a) to interpret a "substantially prevailing party," as provided in 73 P.S. § 512(b)).

Here, the trial court found expressly that Appellant "had a good faith basis, although mistaken, to withhold payment." Trial Court Opinion, 03/01/2012, at 4; *see also* Trial Court Post–Trial Opinion, 10/17/2012, at 3 (reiterating the trial court's determination that Appellant withheld payment in good faith); Trial Court 1925(a) Opinion, 04/09/2013, at 4 (same). The record supports these findings, and we are bound by them. *Piston v. Hughes,* 62 A.3d 440, 443 (Pa.Super.2013). In my view, the trial court's finding is dispositive of this issue, and, therefore, the trial court erred in concluding that Waller was the *substantially* prevailing party. *Zimmerman,* 984 A.2d at 503.

Moreover, the Majority does not suggest a new interpretation of the modifier "substantially," indeed declining to impart it with any particular significance. *See Bridges PBT v. Chatta,* 821 A.2d 590, 593 ("We presume that the legislature intended that the entire statute be effective and disfavors surplusage."). This is particularly troubling in light of the trial court's

initial determination that Waller was the substantially prevailing party *merely* because the court found against Appellant. *See* Post–Trial Opinion, at 4; *Chatta,* 821 A.2d at 593 (rejecting the appellant's efforts to eliminate the modifier "substantially").

Finally, I disagree with the Majority's affirmance of the trial court's post-trial decision to increase its award of attorney fees to Waller. In granting Waller's post-trial motion for additional attorney fees, the court determined to increase its award in order to reflect accurately the bills submitted, concluding that the "large and disproportionate fee" was "largely due to the actions of [Appellant]." *See* Trial Court 1925(a) Opinion at 8. Section 512(b) directs a trial court to award a "reasonable attorney fee." It does not empower a trial court to award a disproportionate fee. Moreover, the trial court did not cite evidence in the record to support its finding that Appellant was responsible for any delay in the proceedings. In my view, there is no support in the record for this finding. *See Piston,* 62 A.3d at 443.