**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3391
_____

C.J. HUGHES CONSTRUCTION COMPANY INC.

v.

EQM GATHERING OPCO, LLC,
                              Appellant
_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. No. 2-18-cv-00168)
District Judge:  Honorable William S. Stickman, IV
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on March 5, 2024
_____

Before:  SHWARTZ, CHUNG, and AMBRO, Circuit Judges

(Filed: April 17, 2024)
_____

OPINION[*]
_____

CHUNG, Circuit Judge.

---

[*]     This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

EQM Gathering OPCO, LLC ("EQM") appeals the District Court's orders: (1) denying its motion for judgment as a matter of law and new trial; (2) granting C.J. Hughes Construction Company ("C.J. Hughes") penalties and attorney fees under the Pennsylvania Contractor and Subcontractor Payment Act ("CASPA"); and (3) denying its motion to correct the penalties and attorney fees order. For the reasons set forth below, we will affirm.

I.      BACKGROUND[1]

In 2015, EQM sought bids to construct four segments of the MAKO pipeline and provided information to enable bidders to estimate the work and costs. EQM awarded the Segment A and Segment D contracts to C.J. Hughes. After C.J. Hughes completed its work, EQM paid C.J. Hughes the base price under the contract. C.J. Hughes then submitted demands for additional compensation to cover the work done beyond EQM's original projections (including additional fittings and welding), claiming that such work was performed to complete the project and fell within the scope of the contract. EQM refused to pay.

C.J. Hughes sued EQM, asserting, inter alia, breach of contract and seeking penalties and attorney fees under CASPA.[2] The jury returned a partial verdict for C.J. Hughes on all portions of its Segment A claim and a portion of its Segment D claim. Specifically, the jury found that (1) C.J. Hughes sought "additional compensation" for work "required to be performed by C.J. Hughes under the contract," as opposed to "extra

---

[1]     Because we write for the parties, we recite only facts pertinent to our decision.
[2]     The District Court bifurcated the contract and CASPA claims.

2

work"; (2) EQM breached the contract by failing to pay C.J. Hughes; and (3) C.J. Hughes was entitled to over $5.8 million for its work. Joint Appendix ("JA") 318–24. The Court separately awarded C.J. Hughes penalties and attorney fees under CASPA, C.J. Hughes Constr. Co. Inc. v. EQM Gathering Opco, LLC, No. 18-cv-168, 2022 WL 18581023 (W.D. Pa. Nov. 21, 2022), and denied EQM's motion for judgment as a matter of law and a new trial, C.J. Hughes Constr. Co. Inc. v. EQM Gathering OPCO, LLC, No. 18-cv-168, 2022 WL 2318172 (W.D. Pa. June 28, 2022). EQM appeals.

II.    DISCUSSION[3]

A.    The District Court Did Not Err in Awarding Penalties and Attorney Fees Under CASPA

1.    CASPA Applies to the Claims Asserted

CASPA applies to all "construction contracts" in Pennsylvania. 73 Pa. Cons. Stat. § 515. It entitles a contractor or subcontractor to prompt "payment from the party with whom the contractor or subcontractor has contracted" "in accordance with the provisions of a contract," id. § 504, see also id. § 507, and allows for penalties when the party wrongfully withholds payment, id. § 512(a).

EQM argues that C.J. Hughes cannot recover under CASPA because CASPA

---

[3]    The District Court had diversity jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291. Our review of the "district court's interpretation and application of state law" and its interpretation of the contract is plenary. Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996) (citation omitted); Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA, 779 F.3d 214, 218 (3d Cir. 2015). We review factual findings for clear error and "must affirm" "as long as the district court's factual findings are plausible … in light of the entirety of the record." Prusky v. ReliaStar Life Ins. Co., 532 F.3d 252, 257–58 (3d Cir. 2008) (quotation marks and citations omitted).

3

claims "must be invoiced claims" and C.J. Hughes did not submit an invoice for the additional compensation it sought. Opening Br. at 24. We disagree. While CASPA provides for invoicing if a contract does not specify when payments will be made, see 73 Pa. Cons. Stat. § 505(b), whether a final invoice issues has no bearing on CASPA's application. Rather, applicability of CASPA is determined by ascertaining whether payment is sought for work within the contract's scope, an assessment that depends on the terms of the contract,[4] not the issuance of an invoice.

EQM also argues that the "additional compensation" C.J. Hughes sought was not wrongfully withheld. Opening Br. at 25. Pennsylvania courts decide whether payment was wrongfully withheld within the meaning of CASPA based on the facts of the case. See El-Gharbaoui v. Ajayi, 260 A.3d 944, 960 (Pa. Super. 2021). The District Court determined that EQM's withholding was wrongful and a penalty was warranted because the evidence showed that C.J. Hughes was entitled to additional payment for the work it performed under the contract. See, e.g., C.J. Hughes, 2022 WL 18581023, at *4. Given this record, we see no clear error in the Court's findings. Prusky, 532 F.3d at 257–58.

### 2. The Penalty Provision Was Not Contractually Waivable

EQM next argues that, even if C.J. Hughes's claims fall within CASPA's scope, the parties expressly waived the CASPA penalty provision.[5] See JA1487. In considering

---

[4] As noted, C.J. Hughes prevailed on certain claims because the jury found that such work fell within the scope of the contract, and EQM does not contest the sufficiency of the evidence on those claims.

[5] EQM acknowledges that the 2018 amendment to CASPA prohibits waiver of its provisions, see 73 Pa. Cons. Stat. § 503(c), but argues that because the express

4

the waivability of CASPA, we must apply state law. See Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A., 879 F.3d 79, 84 (3d Cir. 2018). We are bound to follow the state law as "announced by the highest state court." Id. (citation omitted). If the "state's highest court has not provided guidance, we are charged with predicting how that court would resolve the issue." Id. (citation omitted). We are required to "give 'due deference' to the intermediate state courts' rulings." Id. (quoting In re Makowka, 754 F.3d 143, 148 (3d Cir. 2014)). Intermediate decisions are not controlling, however, and "we are free to reach a contrary result if, by analyzing other persuasive data, we predict that the State Supreme Court would hold otherwise." In re Makowka, 754 F.3d at 148 (citation omitted). Persuasive data "may include, *inter alia*, 'what the Pennsylvania Supreme Court has said in related areas' and 'the 'decisional law' of the Pennsylvania intermediate courts.'" Id. (citation omitted).

CASPA allows for the imposition of three kinds of liability when a party violates the payment terms of a contract: interest under subsection 505(d), penalties under subsection 512(a), and attorney fees and expenses under subsection 512(b). See Scungio Borst & Assocs. v. 410 Shurs Lane Devs., LLC, 146 A.3d 232, 233 (Pa. 2016). While subsection 505(d) expressly permits parties to contractually waive interest, see 73 Pa. Cons. Stat. § 505(d) (allowing interest "[e]xcept as otherwise agreed by the parties") and subsection 512(b) expressly prohibits parties from contractually waiving attorney fees

---

prohibition was not in effect at the time the parties' contract was entered, no such prohibition existed prior to its amendment. For the reasons expressed herein, we disagree.

5

and expenses, <u>see</u> 73 Pa. Cons. Stat. § 512(b) (requiring recovery of reasonable attorney fees "[n]otwithstanding any agreement to the contrary"), Section 512(a) is silent as to the waivability of penalties, <u>see</u> 73 Pa. Cons. Stat. § 512(a).[6]

The Pennsylvania Supreme Court has not addressed the waivability of CASPA's penalty provision, but the Superior Court has rendered two decisions on the issue. First, in <u>John B. Conomos, Inc. v. Sun Co. (R&M)</u>, decided before the parties signed the contract, the Superior Court held that CASPA "does not permit the penalty [or attorney fees provisions] to be waived by the parties." 831 A.2d 696, 711 (Pa. Super. 2003). The Superior Court noted the language expressly permitting waiver in CASPA's interest provision (subsection 505(d)) and concluded that, in the absence of similar language, the penalty provision was not waivable. <u>Id.</u> at 710–11. In <u>E. Allen Reeves, Inc. v. Old York, LLC</u>, decided last year, the Superior Court revisited <u>Conomos</u> and observed that CASPA included language both expressly permitting and prohibiting the waiver of CASPA liabilities. 293 A.3d 284, 294 (Pa. Super. 2023). The Superior Court concluded nonetheless that because the penalty provision made penalties mandatory and lacked "any language allowing the parties to waive CASPA's penalties," the provision could not be

---

[6]    The inclusion of the express language in § 512(b) may have been prompted by the legislature's desire to make clear that the American Rule, which is the default in Pennsylvania and requires parties to bear their own attorney fee costs, could not be invoked. <u>McMullen v. Kutz</u>, 985 A.2d 769, 775 (Pa. 2009) (American Rule generally applicable in Pennsylvania, absent exception by statute or agreement); <u>Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.</u>, 64 A.3d 1058, 1066 (Pa. 2013) (same).

6

waived. Id. at 295.[7] Conomos and Old York, in effect, hold that when a provision of CASPA is silent, waiver is not permitted. This interpretation is consistent with effecting the purpose of CASPA by ensuring broad applicability of the statute. See Ruthrauff, Inc. v. Ravin, Inc., 914 A.2d 880, 890 (Pa. Super. 2006) ("The underlying purpose of [CASPA] is to protect contractors and subcontractors" and "to encourage fair dealing among parties to a construction contract.") (citations omitted).

We cannot discount the Conomos and Old York decisions absent some persuasive data that the state supreme court would reach a result to the contrary. In re Makowka, 754 F.3d at 148. EQM provides no persuasive data showing that the Pennsylvania Supreme Court would have decided differently from Conomos or Old York, nor have we found any. Instead, EQM argues that, since the attorney fees provision in subsection 512(b) expressly prohibits waiver, we must determine that the silence in the penalty provision in subsection 512(a) permits waiver. EQM fails, however, to address the effect of reading subsection 512(a) together with the language permitting waiver in subsection 505(d), which by the same logic would produce the opposite conclusion.[8]

---

[7]     The Superior Court expressly declined to consider the effect, if any, of the 2018 amendment because it concluded that the penalty provision was not waivable; thus, the defendant in that case was "not entitled to relief even without the application of [the] new law." Old York, 293 A.3d at 295 n.4.

[8]     Generally, Pennsylvania courts strongly "disfavor interpretations that render as surplusage even a single statutory word." Shrom v. Pennsylvania Underground Storage Tank Indemnification Bd., 292 A.3d 894, 919 n.2 (Pa. 2023) (Mundy, J., concurring). In reading the three provisions together, however, interpreting the waivability of the penalty provision will inevitably render either the express waiver language in the interest provision or the attorney fees provisions as surplusage. Thus, here some surplusage may be permitted where "the plain text of the [statute] requires it." Id.

7

We believe that reading sections 505 and 512 together is consistent with explicit guidance from the Pennsylvania Supreme Court that sections (not just subsections) of a statute are to be read as a whole.  See e.g., Allstate Life Ins. Co. v. Com., 52 A.3d 1077, 1080–81 (Pa. 2012) ("[S]tatutes are considered to be *in pari materia* when they relate to the same … things, and statutes or parts of statutes *in pari materia* shall be construed together, if possible.").  Reading the subsections together also makes sense in light of the Pennsylvania Supreme Court's directive to "liberally construe statutes 'to effect their objects'" and its determination that CASPA's purpose was to "solve payment disputes in the construction field" and "protect[] contractors and subcontractors."  See Scungio, 146 A.3d at 239 and n.12; see also Ajayi, 260 A.3d at 957.  Accordingly, we cannot agree with EQM's argument that the express waiver prohibition in subsection 512(b) is persuasive data showing that "the state supreme court would reach a contrary result" from Conomos and Old York, and we predict that the Pennsylvania Supreme Court would hold that the penalty provision was not waivable, rendering the parties' contractual waiver invalid.  In re Makowka, 754 F.3d at 148.[9]

### 3. The District Court Did Not Err in Awarding Attorney Fees

EQM lastly argues that a good faith requirement must be read into CASPA's attorney fee provision,[10] and that the District Court erred as a matter of law when it failed

---

[9] EQM cites no case, and we have found none, saying that CASPA, in its entirety, is waivable.  Furthermore, it follows that if certain provisions of CASPA are not waivable (e.g., penalties and attorney fees), CASPA in its entirety is not waivable.

[10] The attorney fees provision provides that "the substantially prevailing party in any proceeding to recover any payment under [the] act shall be awarded a reasonable attorney

8

to read in such a requirement. In support, EQM relies on <u>Zimmerman v. Harrisburg Fudd</u> <u>I, L.P.</u>, 984 A.2d 497, 503 (Pa. Super. 2009) and challenges the Court's reliance on <u>Waller Corp. v. Warren Plaza, Inc.</u>, 95 A.3d 313, 319 (Pa. Super. 2014). In <u>Zimmerman</u>, the Superior Court held that to "qualify as a substantially prevailing party," the claimant "needed … also to prove the [defendant], without good faith reason, failed to comply with CASPA's mandate of prompt payment." 984 A.2d at 503. But the Superior Court revisited this decision in <u>Waller</u> and, in analyzing the good faith requirement, held that, "[b]ased on a close reading of relevant cases and the unambiguous statutory language of section 512(b)," the requirement that a claimant prove that the defendant withheld payment without good faith reason to recover attorney fees under Section 512(b) "is an erroneous legal conclusion." <u>Waller</u>, 95 A.3d at 317-18.

Upon review of these conflicting intermediate decisions, we predict that the Pennsylvania Supreme Court would follow <u>Waller</u> over <u>Zimmerman</u> primarily because the plain text of the attorney fees provision provides no good-faith exception. <u>See</u> 73 Pa. Const. Stat. § 512(b); <u>Waller</u>, 95 A.3d at 319; <u>see also</u> <u>Marcellus Shale Coal. v. Dep't of</u> <u>Env't Prot.</u>, 292 A.3d 921, 937 (Pa. 2023) (stating that generally "the best indication of legislative intent" is the statute's plain text) (citation omitted). Further, as <u>Waller</u> explains, <u>Zimmerman</u> appears to misconstrue the case law on which it relies, casting

---

fee in an amount to be determined by the court … together with expenses." 73 Pa. Cons. Stat. § 512(b).

doubt on its legal soundness on this issue. See Waller, 95 A.3d at 317–19.[11]

We also reject EQM's argument that the District Court abused its discretion in determining that C.J. Hughes was the substantially prevailing party. See Zavatchen v. RHF Holdings, Inc., 907 A.2d 607, 610 (Pa. Super. 2006) (reviewing conclusion that a party substantially prevailed for abuse of discretion.) The District Court acted well within its discretion in concluding that C.J. Hughes substantially prevailed as the record shows that (a) the jury awarded C.J. Hughes seventy-four percent of the damages sought at trial; and (b) while C.J. Hughes did not prevail on or voluntarily withdrew certain claims, such claims amounted to only thirty percent of the jury's total award, and were not the "primary claims at issue between the parties." C.J. Hughes, 2022 WL 18581023, at *7.[12]

Accordingly, the District Court correctly awarded CASPA penalties and fees.[13]

---

[11]     EQM cites two non-precedential opinions for the proposition that superior courts "post-Waller … continue[] to cite Zimmerman in support" of a good faith exception. Reply Br. at 22–23. Unlike Waller, which has precedential value, these cases do not reflect "the decisional law of the Pennsylvania intermediate courts." In re Makowka, 754 F.3d at 148 (quotation marks and citation omitted).

[12]     Likewise, the District Court acted within its discretion in declining to exclude fees and costs associated with C.J. Hughes's failed and withdrawn claims because it determined that it would be "impossible and unjust" to reduce fees related to such claims because they "arose from the common nucleus of fact giving rise to the claims upon which C.J. Hughes prevailed before the jury." C.J. Hughes, 2022 WL 18581023, at *8; cf. McKenna v. City of Philadelphia, 582 F.3d 447, 457 (3d Cir. 2009).

[13]     We will also deny EQM's request that we certify to the Pennsylvania Supreme Court questions related to its CASPA arguments because none of the factors that support certification are present. United States v. Defreitas, 29 F.4th 135, 141–42 (3d Cir. 2022).

10

B.     The District Court Did Not Err in Denying EQM's Motion for Judgment as a Matter of Law or for a New Trial[14]

EQM also challenges the District Court's denial of its motion for judgment as a matter of law and a new trial, arguing that the jury erred in determining that C.J. Hughes's Segment A claims were not barred by the parties' one-year contractual statute of limitations. JA1482. To prevail on this affirmative defense, Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 487 (3d Cir. 1985), EQM must show that C.J. Hughes's Segment A fitting and welding claims accrued at some point prior to February 6, 2017, and that "no rational jury could have found to the contrary." E.E.O.C. v. State of Del. Dep't of Health & Soc. Servs., 865 F.2d 1408, 1414 (3d Cir. 1989).

EQM points to no evidence in the record establishing that it carried its burden as to the accrual date of either claim, and the evidence supports the jury's findings. As to the April 17, 2017 accrual date for the Segment A claim, the evidence included (1) C.J. Hughes's March 16, 2017, demand letter which, under the contract required payment within thirty days (and thus, a breach for failure to do so on April 16, 2017) and (2) the testimony demonstrating that as of July 2016—the date that EQM argues C.J. Hughes

---

[14]     We "exercise plenary review of an order granting or denying a motion for judgment as a matter of law and apply the same standard as the district court." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). That standard requires us to assess whether, viewing the evidence in the light most favorable to sustaining the verdict, a reasonable jury could have found for the prevailing party. Graboff v. Colleran Firm, 744 F.3d 128, 134 (3d Cir. 2014) (citations omitted). We review the district court's denial of a motion for a new trial for abuse of discretion. Lightning Lube, Inc., 4 F.3d at 1167 (citation omitted). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 248–49 (3d Cir. 2014) (quotation marks and citations omitted).

11

was required to make its demand by—the parties were still discussing the possibility of resolving the extra fitting costs at a later date. As to the May 10, 2019 accrual date for the Segment A welding claim, the evidence shows that May 10, 2019 was the date EQM demonstrated its refusal to pay and did so in the form of its answer to C.J. Hughes's amended complaint. EQM offers no support for its argument that it is a "legal impossibility" for the claim to accrue after C.J. Hughes filed its amended complaint, Opening Br. at 55. Moreover, the record shows that it was not until discovery in this case that C.J. Hughes learned that EQM knew about the welding issue that led to the extra work. Thus, the jury could have reasonably determined that C.J. Hughes could not have demanded payment, and in turn that EQM did not refuse payment, until filing its May 10, 2019 answer.[15]

Accordingly, we conclude the District Court correctly denied EQM's motions for judgment as a matter of law and for a new trial.

III.    CONCLUSION

For these reasons, we will affirm the District Court, and we will deny the motion to certify.

---

[15]    EQM does not contest the District Court's conclusion that it forfeited its argument that the May 10, 2019 accrual date stems only from a remark made in counsel's closing argument by failing to object to that remark during opposing counsel's closing argument, and the Court acted within its discretion in denying the new trial motion on this basis. See McLaughlin, 756 F.3d at 248–49.

12

**AMBRO**, <u>Circuit Judge</u>, dissenting in part:

I am pleased to join the majority's thoughtful opinion in almost all respects. However, I would not award C.J. Hughes[1] penalties under CASPA § 512(a) (the "Penalty Provision") because I think the Pennsylvania Supreme Court would enforce its contractual waiver. So I respectfully dissent on that issue only.

The majority correctly explains that, when we interpret state law, we must rule as we predict that state's supreme court would. In this case, that means our first step is a review of on-point case law of the Supreme Court of Pennsylvania. I agree with the majority that it has not issued any decisions that directly address whether the Penalty Provision can be waived.

Next, I look to the plain text of the section of CASPA that houses the Penalty Provision in effect when C.J. Hughes contracted with EQM:

**<u>Penalty and attorney fee</u>**.

(a) <u>Penalty for failure to comply with act</u>. If arbitration or litigation is commenced to recover payment due under [the CASPA] and it is determined that [a] . . . contractor . . . has failed to comply with the payment terms of this act, the . . . court shall award, in addition to all other damages due, a penalty. . . .

(b) <u>Award of attorney fee and expenses</u>. Notwithstanding any agreement to the contrary, the substantially prevailing party in any proceeding to recover any payment under this act shall be awarded a reasonable attorney fee . . . .

---

[1] This dissent incorporates defined terms used in the majority opinion.

1

CASPA. § 512. Subsection (b) (the "Fee Provision") explicitly prohibits waiver, while the Penalty Provision (in subsection (a)) is silent on the subject. If the Penalty Provision cannot be waived, even without a direct waiver prohibition, the Fee Provision's anti-waiver language was entirely unnecessary. In legal jargon, that means it would be "surplusage." The Pennsylvania Supreme Court disfavors interpretations that result in surplusage, and we are entitled to presume that the Pennsylvania General Assembly does not intend it. *Nw. Savs. Bank v. Knapp*, 149 A.3d 95, 98 (Pa. 2016) ("The General Assembly intends for the entire statute to be certain and effective, and not for any particular words to constitute 'mere surplusage'" (citing *Fish v. Twp. of Lower Merion*, 128 A.3d 764, 769 (Pa. 2015))); 1 Pa. Cons. Stat. § 1922(2) ("In ascertaining the intention of the General Assembly in the enactment of a statute[, courts may presume that] : . . . the General Assembly intends the entire statute to be effective[.]"). Following that unambiguous guidance, I conclude that the Penalty Provision can be waived.

The majority opinion decides otherwise, relying primarily on CASPA § 505(d) (the "Interest Provision"). That provision, which is explicitly waivable, entitles contractors to interest on late payments. *Id.* My colleagues believe the Interest Provision is just as relevant to interpreting the Penalty Provision as the Fee Provision, because all three provisions impose "liability when a party violates the payment terms of a contract". Maj. Op. at 5-8. Doing so muddies the analytical waters, as the Interest Provision's waiver-enabling language implies that the CASPA generally cannot be waived, while the

2

Fee Provision's waiver prohibition suggests that the statute's other provisions are, by default, waivable.

But I do not think the Interest Provision is relevant to our interpretation of the Penalty Provision. CASPA § 505, which houses the Interest Provision, provides a series of default payment terms in Pennsylvania construction contracts, all of which are explicitly waivable. *Id.* (b)-(d); *Scungio Borst & Assocs. v. 410 Shurs Lane Devs.*, LLC, 146 A.3d 232, 233 (Pa. 2016) ("CASPA generally provides that a contractor . . . is entitled to timely payment pursuant to governing contract terms, or, in the absence of such terms, according to a statutorily-specified timetable[.]")

Unlike the Interest Provision, CASPA § 512 (home to both the Penalty and Fee Provisions) offers compensation only if a contractor prevails in litigation. That stands in contrast to the Interest Provision, which does not require a court proceeding to be effective. Restated, CASPA § 505 sets payment terms absent a contract while CASPA § 512 offers remedies to contractors who must sue to obtain payment. In light of that difference, I think it makes sense to read the Penalty Provision with the Fee Provision, its statutory bunkmate, but not the Interest Provision, which serves another purpose altogether.[2]

---

[2] The majority also notes that holding the Penalty Provision unwaivable furthers CASPA's policy goals. Perhaps so, but we cannot assume "that any interpretation of a law that does more to advance a statute's putative goal must be the law [because l]aws are the product of compromise, and no law pursues its purposes at all costs." *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023) (cleaned up, citing *Henson v. Santander Consumer USA Inc.*, 582

The majority opinion also defers to two decisions from the Pennsylvania intermediate appellate courts. *John B. Conomos, Inc. v. Sun Co., Inc. (R&M)*, 831 A.2d 696 (Pa. Super. 2003); *Allen Reeves, Inc. v. Old York, LLC*, 293 A.3d 284 (Pa. Super. 2023). I quote in full their relevant analyses.

> Unlike the [Interest Provision], [the Penalty Provision] does not provide for the ability of parties to agree to no penalties . . . . The [CASPA] does not permit the [Penalty Provision] to be waived by the parties. *See* [CASPA] § 512.

*Conomos*, 831 A.2d at 710-11.

> CASPA requires that penalties be imposed for failure to comply with its provisions . . . . Although . . . [the Penalty Provision] does not contain the clause "notwithstanding any agreement to the contrary" that appears in [the Fee Provision], [the Penalty Provision] provides mandatory penalties that "shall" be imposed in arbitration against a party who has failed to comply with CASPA's payment terms. [The Penalty Provision] does not contain any language allowing the parties to waive CASPA's penalties. Based on these distinctions, this Court held in *Conomos* that CASPA does not allow parties to contractually waive the [Penalty Provision].

---

U.S. 79, 89 (2017)). *Cf. Marcellus Shale Coal. v. Dep't of Env't Prot.*, 292 A.3d 921, 937 (Pa. 2023) ("In general, the best indication of legislative intent is the plain text of the statute") (citation omitted).

4

*Allen Reeves*, 293 A.3d at 295.  Given that these decisions are essentially conclusory, citing no other caselaw, not explaining why the Fee Provision's waiver prohibition is irrelevant, and never discussing the surplusage question, they play little role in my analysis.  But the majority sees no "persuasive data" suggesting the Supreme Court of Pennsylvania would disagree with their holdings, and therefore "cannot" disagree with them.  Maj. Op. at 7 (citing *In re Makowka*, 754 F.3d 143, 148 (3d Cir. 2014)).  I do not believe that is the best reading of our case law.

This Circuit's decisions on state law frequently emphasize that, although we are not bound by state intermediate appellate court decisions, *Makowka*, 754 F.3d at 148, they are "particularly relevant" in our quest to predict how state supreme courts will rule.  *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004).  It is hardly a mystery why: state courts are more expert in their native law than the federal circuits.  It is beyond question that, when state courts thoughtfully answer state-specific questions of law, we should hesitate mightily before concluding they erred.  *Cf.  Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 174 (3d Cir. 2005) (we owe meaningful deference to the "considered judgment" of state intermediate appellate courts) (citation omitted).

But the case for deference weakens considerably when, as here, the state courts provide *de minimis* analysis.  After all, our goal is to predict how state supreme courts would rule, and the substantial respect we rightly extend them means that we should not assume they will follow decisions that are minimally explained or facially erroneous.  We have disregarded state intermediate appellate court decisions on that basis in the past.

*Makowka*, 754 F.3d at 148-49 (disagreeing with controlling state intermediate appellate case because "it is internally inconsistent, it conflicts with the text and structure of [the statute], and it contravenes a fundamental precept of Pennsylvania law."); *Roma v. United States*, 344 F.3d 352, 359-62 (3d Cir. 2003). We should not hesitate to do so when, as here, data – like Pennsylvania precedent and law on statutory interpretation – supports a different view. I thus respectfully dissent.