J-E01002-25

| | | |
|---|---|---|
| TEDESCO EXCAVATING & PAVING, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FWH DEVELOPMENT, LLC | : | |
| | : | No. 995 WDA 2022 |
| Appellant | : | |

Appeal from the Judgment Entered August 1, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 19-006017

BEFORE:  LAZARUS, P.J., BOWES, J., PANELLA, P.J.E., DUBOW, J.,
McLAUGHLIN, J., KING, J., SULLIVAN, J., BECK, J., and LANE, J.

DISSENTING OPINION BY BOWES, J.:          **FILED: March 27, 2026**

Respectfully, the learned Majority's disagreement with FWH Development, LLC ("FWH") is premised upon a faulty assumption that FWH is arguing something that it is not.  FWH never suggests, much less "insist[s]" as the Majority claims, that Tedesco could not recover CASPA damages because it did not complete the entirety of its contract.[1]  **See** Majority Opinion

---

[1] Likewise, FWH explicitly did not rely upon either 73 P.S. § 506 or the Prompt Pay Act to shield itself from liability, but rather as a point of comparison in interpreting the meaning of performance within the relevant provisions of CASPA.  **Compare** Majority Opinion at 19 (discussing why FWH is not shielded by § 506) **with** FWH's substituted brief at 12 n.3 (noting that "[§] 506 has no applicability here"); **compare** Majority Opinion at 19 n.6 ("Similarly, we reject FWH's reliance on [62 P.S. §] 3394") **with** FWH's substituted brief at 13 (explaining that "[a]lthough no Court has considered the exact question of whether a contractor or subcontractor must first perform before the remedial protections of CASPA apply, this Court has addressed similar language in the
*(Footnote Continued Next Page)*

at 8 (stating that FWH's interpretation "assumes" that the General Assembly meant to define performance as "performance of physical work and completion of the construction project" (cleaned up)); *id*. at 12 ("Nothing in the statute or the appropriate, remedial definition from Black's Law Dictionary requires the completion of all physical work to constitute 'performance,' as FWH insists." (cleaned up)).

Rather, FWH merely states the obvious: "Tedesco did not seek as damages payment for work performed; it sought **anticipated** profits. These damages fall well outside the ambit of the clear and unambiguous language limiting CASPA's reach to the wrongful refusal to pay for work actually performed and satisfactorily completed." FWH's substituted brief at 15 (citation omitted, emphasis in original). In my view, the Majority's mistaken reading of FWH's arguments and its understandable sympathy for Tedesco has led it to misconstrue both the plain language and the purpose of CASPA to award Tedesco additional damages to which it was simply not entitled. Since I would vacate the trial court's molded verdict to add CASPA damages, I respectfully dissent.

Were I writing for the Majority, I would begin with FWH's sole claim before this Court: "Whether a contractor that has been paid for all work performed under a construction contract is entitled to recover interest and attorneys' fees under [CASPA]." FWH's substituted brief at 4. As this question

_____

Prompt Pay Act," and therefore utilized those similarities in support of its interpretation of the pertinent CASPA language).

requires us to interpret a statute, the following pertinent legal tenets guide our analysis:

> Generally, the plain language of the statute "provides the best indication of legislative intent." ***Miller v. Cnty. of Centre***, 173 A.3d 1162, 1168 (Pa. 2017) (citing 1 Pa.C.S. § 1921(b)). If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." ***Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n***, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa.C.S. § 1921(b)). In this vein, "we should not insert words into a statute that are plainly not there." ***Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)***, 52 A.3d 241, 245 (Pa. 2012).

***Commonwealth v. Lehman***, 311 A.3d 1034, 1044 (Pa. 2024) (footnote omitted). Further:

> A statute is ambiguous when it is susceptible to . . . at least two reasonable interpretations. While we must consider the statutory language in its full context before we assess ambiguity, we must not overlabor to detect or manufacture ambiguity where the language reveals none. We strive to give effect to each word.

***Greenwood Gaming & Entm't, Inc. v. Dep't of Revenue***, 306 A.3d 319, 329 (Pa. 2023) (cleaned up).

Next, I would examine the words of the statute itself. Section 504 states: "Performance by a contractor or a subcontractor in accordance with the provisions of a contract shall entitle the contractor or subcontractor to payment from the party with whom the contractor or subcontractor has contracted." 73 P.S. § 504. Payment for such performance is required as follows:

> **(a) Construction contract.--**The owner shall pay the contractor strictly in accordance with terms of the construction contract.

**(b) Absence of payment term.--**In the absence of a construction contract or in the event that the construction contract does not contain a term governing the terms of payment, the contractor shall be entitled to invoice the owner for progress payments at the end of the billing period. The contractor shall be entitled to submit a final invoice for payment in full upon completion of the agreed-upon work.

**(c) Time for payment.--**Except as otherwise agreed by the parties, payment of interim and final invoices shall be due from the owner 20 days after the end of a billing period or 20 days after delivery of the invoice, whichever is later.

**(d) Interest.--**Except as otherwise agreed by the parties, if any progress or final payment to a contractor is not paid within seven days of the due date established in subsection (c), the owner shall pay the contractor, beginning on the eighth day, interest at the rate of 1% per month or fraction of a month on the balance that is at the time due and owing.

**(e) Suspension of performance.--**

(1) If payment is not received by a contractor in accordance with this section, the contractor shall have the right to suspend performance of any work, without penalty, until payment is received according to the terms of the construction contract. Any procedure in a construction contract that exceeds the procedure in paragraph (2) shall be unenforceable.

(2) Suspension of performance in a construction contract may occur in accordance with paragraph (1) or if:

(i) payment has not been made to the contractor in accordance with the schedule established under subsection (c);

(ii) at least 30 calendar days have passed since the end of the billing period for which payment has not been received according to the terms of the construction contract. The contractor shall provide written notice to the owner or the owner's authorized

agent, via electronic mail or postal service, stating that payment has not been made; and

(iii) at least 30 calendar days have passed since the written notice in subparagraph (ii) has been sent. The contractor shall provide at least 10 calendar days' written notice, via certified mail, of the contractor's intent to suspend performance to the owner or the owner's authorized agent.

73 P.S. § 505.

Lastly, § 512 outlines the additional damages available for CASPA violations:

**(a) Penalty for failure to comply with act.--**

(1) If arbitration or litigation is commenced to recover payment due under this act and it is determined that an owner, contractor or subcontractor has failed to comply with the payment terms of this act, the arbitrator or court shall award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was wrongfully withheld.

(2) An amount shall not be deemed to have been wrongfully withheld if all of the following apply:

(i) The amount bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against whom the contractor or subcontractor is seeking to recover payment.

(ii) The claim holder complies with [§ 50]6 or [5]11.

**(b) Award of attorney fee and expenses.--**Notwithstanding any agreement to the contrary, the substantially prevailing party in any proceeding to recover any payment under this act shall be awarded a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses.

73 P.S. § 512 (footnote omitted).

FWH's argument is simple:

This appeal raises a straightforward issue of statutory construction. CASPA plainly states that its enhanced remedies are available when payment is not made for work that is completed and properly invoiced in accordance with the terms of the parties' agreement. CASPA does not apply to any breach of a construction contract, and Tedesco's claim for wrongful termination resulting in loss of anticipated profit on work not performed falls far outside of CASPA's remedial umbrella. It is clear from the record below that Tedesco is not entitled to CASPA damages because it was paid in full for all work it actually performed under the contract.

FWH's substituted brief at 11.

I wholly agree with this interpretation. Although "performance" within § 504 is not defined, "the lack of statutory definitions does not preclude a plain-language analysis[.]" *Greenwood Gaming*, 306 A.3d at 331. Despite various dictionaries providing numerous definitions for the term, as detailed by the Majority, I simply cannot agree that "performance," as used in that section of CASPA, is ambiguous. To me, the foregoing statutory language conveys a clear and definite meaning: performance, in full or in part, is the *sine qua non* that entitles the contractor to payment, and the economic sanctions apply when payment is not forthcoming. Stated differently, CASPA requires payment for work, services, and materials provided and billed on eligible construction projects, and affords penalty interest, fees, and costs to a contractor or subcontractor if those payments are withheld after being requested.

Since I do not find the term ambiguous as written in the text of the statute, I would not proceed to the rules of statutory construction to ascertain

the legislature's intent. Nevertheless, because the Majority looks beyond the plain language of § 504 to determine the meaning of "performance," I will address its conclusion as I also find that analysis unpersuasive. The Majority deems "performance" in § 504 to include the Black's Law Dictionary definition for "part performance[:] accomplishment of some but not all of one's contractual obligations." Majority Opinion at 12 (cleaned up). While I do not disagree that CASPA's usage of "performance" includes part performance, I take issue with how the Majority applies that definition to the case at hand. Specifically, the Majority concludes that having fulfilled some of its obligations, Tedesco had performed and was therefore entitled to CASPA damages for the amount of its lost profits and overhead. In so holding, the Majority intimates that FWH's alleged interpretation "requir[ing] the completion of all physical work" is "unreasonable" because it would prevent a contractor from collecting CASPA damages for unpaid performance if the owner stopped the contractor from finishing the entire project. *See* Majority Opinion at 12, 13 n.5.

Respectfully, that premise is not founded upon a clear reading of the statutory language or FWH's actual argument. As indicated above, FWH never argues that a contract must be fully completed before CASPA damages can be sought. Even if it did, I believe it is clear from the statutory language that if a contractor performs some part of the contract, seeks payment, and payment is withheld, the contractor could seek CASPA damages for that non-payment. The contractor would not be able to collect CASPA damages on the entire contract amount if it had not yet completed that performance, but nothing

prevents the contractor from seeking incremental payment and CASPA damages for any non-payment.

To illustrate, I point to the facts from the instant case. Tedesco acquired signal poles for the project and submitted Payment Application No. 1 to FWH seeking $56,873.84 compensation. FWH paid that invoice. Had FWH failed to pay Tedesco for that performance and Tedesco sued for recompense, CASPA would have provided an avenue for Tedesco to seek additional damages. Indeed, I do not believe there is any question that Tedesco would be eligible to pursue CASPA damages for non-payment of work that it had performed and billed FWH.

Yet, that is not the posture of this case. Tedesco's lawsuit did not concern failure to satisfy a payment application for work performed pursuant to the contract prior to the breach. Rather, it involved a dispute over the breadth of damages for FWH's wrongful termination of the contract. I am not persuaded by Tedesco's attempt to disguise its request for damages as performance by submitting a payment application for lost profits and overhead in order to be eligible for CASPA damages.

By way of background, Tedesco sued FWH on April 23, 2019 for breach of contract, alleging that it "ha[d] been damaged in the amount of $383,776.17, representing its lost overhead and profit on the Project, plus interest, penalty interest, attorneys' fees and other damages relating to the diminution of its business." Complaint, 4/23/19, at ¶ 21. FWH filed several preliminary objections, one of which was in the nature of a demurrer as to the

- 8 -

prayer for CASPA damages because Tedesco did not plead that FWH had failed to make a progress payment for work performed under the contract, only that it incurred damages relating to lost profits. *See* Preliminary Objections, 6/4/19, at 8-9. In response, Tedesco confirmed that it was seeking lost profits based upon FWH's breach, but that CASPA applied because FWH breached the contract and refused to pay Tedesco's lost profits allegedly due under the contract as a result of the breach. *See* Plaintiff's Brief in Opposition to Preliminary Objections, 7/17/19, at 8. The trial court overruled FWH's other preliminary objections, but sustained the one regarding CASPA damages with leave to amend.

Tedesco thereafter submitted an amended complaint. Therein, it referenced and attached, for the first time, Payment Application No. 2, which sought payment in the amount of $383,776.17. Tedesco explained that this amount "represent[ed] the overhead and profit it was due under the [c]ontract." Amended Complaint, 11/11/19, at 5. Notably, Payment Application No. 2 was submitted one day after Tedesco filed the original complaint. *See* Amended Complaint, 11/11/19, at Exhibit 4 (Payment Application No. 2, 4/24/19).[2]

Payment Application No. 2, which was submitted **after** the initiation of this suit and for the **exact same** amount of Tedesco's *ad damnum* clause, unequivocally did not itemize any of the uncompensated work purportedly

---

[2] The Majority incorrectly recounts that Payment Application No. 2 was issued "[o]n the same date" as the original complaint. *See* Majority Opinion at 4.

completed by Tedesco prior to FWH's breach, such as hiring an electrical subcontractor, submitting shop drawings, attending meetings, or obtaining insurance, which Tedesco now claims for the first time on appeal. Pursuant to the terms of the contract, Tedesco should have sought payment for those activities from FWH through a payment application, but it did not. If it had, and FWH refused to pay, then concededly Tedesco could have invoked CASPA.

Viewed properly, though, Payment Application No. 2 only pursued payment for Tedesco's presumed lost profits and overhead, which it had already demanded by filing a complaint against FWH for breach of contract. Throughout these proceedings, Tedesco has consistently been seeking payment for lost overhead and profits resulting from FWH's breach of the contract, not compensation for any specific work it had performed under the contract and was not paid as requested. While the latter implicates CASPA, the former unambiguously does not.

Insofar as the Majority laments the prospect of Tedesco losing the additional CASPA damages because FWH was "stringing Tedesco along for four years[,]" I note that my interpretation of CASPA does not mean Tedesco walks away empty-handed.[3] Indeed, this conduct was the reason that the jury awarded Tedesco $401,046 in damages. Moreover, Tedesco may be entitled to six percent interest pursuant to the terms of the contract and post-

---

[3] While FWH decided when the project would commence, Tedesco chose to wait four years for it to do so.

judgment interest at the legal rate as determined by the Pennsylvania Judicial Code.[4]  Nevertheless, it is clear to me that Tedesco is **not** eligible for the supplementary awards of augmented interest (12%), counsel fees, and litigation costs pursuant to the provisions outlined in CASPA because FWH did not refuse to pay Tedesco for any invoiced performance.

The Majority assails any interpretation that does not allow for Tedesco to recover CASPA damages in the following manner:

> CASPA's ordinary interest, penalty interest, and attorneys' fees are particularly appropriate here to offset the losses that FWH caused Tedesco from both this Project and other potential paving jobs that Tedesco could not schedule while it waited on FWH.
>
> Otherwise, there is no law to discourage unscrupulous owners, such as FWH, from anticipatorily repudiating construction contracts and subsequently litigating the contractor (and particularly a small, solo contractor) to death.  While an owner is entitled to its day in court as well, we see no reason why it should be allowed to repudiate a contract as flagrantly as FWH has and then not reimburse the contractor's attorneys' fees and interest under . . . CASPA after the owner loses before a jury.

Majority Opinion at 17.

---

[4] Specifically, 42 Pa.C.S. § 8101 sets forth:  "Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at the lawful rate from the date of the verdict or award, or from the date of the judgment, if the judgment is not entered upon a verdict or award."  As to attorneys' fees, Pennsylvania generally applies the American Rule, which provides "that a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties[,] or some other established exception." **Clean Air Council v. Dep't of Envtl. Prot.**, 289 A.3d 928, 934 n.19 (Pa. 2023) (quoting **Mosaica Academy Charter Sch. v. Dep't of Educ.**, 813 A.2d 813, 822 (Pa. 2002)).  CASPA is an exception to this rule.

Even so, that is not the purpose of CASPA, which was outlined by a three-judge panel of this Court thusly:

> CASPA [is] a comprehensive statute enacted in 1994 to cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors. The underlying purpose of CASPA is to protect contractors and subcontractors and to encourage fair dealing among parties to a construction contract. The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. Under circumstances prescribed in the statute, interest, penalty, attorney fees and litigation expenses may be imposed on an owner, contractor or subcontractor who fails to make payment to a contractor or subcontractor in compliance with the statute.

*Zimmerman v. Harrisburg Fudd I, L.P.*, 984 A.2d 497, 500–01 (Pa.Super. 2009) (cleaned up).[5] Certainly, these sophisticated parties could have negotiated for attorneys' fees if one of the parties breached. Their lack of foresight in that regard cannot form a basis for this Court to extend CASPA beyond its limits.

For similar reasons, I cannot concur with the Majority's declaration that FWH was obligated to pay Tedesco its lost profits and overhead, in accordance with Article 5.2 of the contract, because Tedesco titled Payment Application No. 2 a final payment. *See* Majority Opinion at 19-20. Article 5.2 provides in full: "Final Payment. Upon final completion and acceptance of the Work in accordance with paragraph 14.13 of the General Conditions, OWNER shall pay

---

[5] The Majority also relies upon this interpretation of CASPA's purpose. *See* Majority Opinion at 7.

the remainder of the Contract Price as recommended by ENGINEER as provided in said paragraph 14.13." Amended Complaint, 11/11/19, at Exhibit 2 (Agreement, 5/19/15, at Art. 5.2). The referenced section then provides:

> 14.13 If, on the basis of ENGINEER's observation of the Work during construction and final inspection, and ENGINEER's review of the final Application for Payment and accompanying documentation as required by the Contract Documents, ENGINEER is satisfied that the Work has been completed and CONTRACTOR's other obligations under the Contract Documents have been fulfilled, ENGINEER will, within ten days after receipt of the final Application for Payment, indicate in writing ENGINEER's recommendation of payment and present the Application to OWNER for payment. At the same time ENGINEER will also give written notice to OWNER and CONTRACTOR that the Work is acceptable subject to the provisions of paragraph 14.15. Otherwise, ENGINEER will return the Application to CONTRACTOR, indicating in writing the reasons for refusing to recommend final payment, in which case CONTRACTOR shall make the necessary corrections and resubmit the Application. Thirty days after the presentation to OWNER of the Application and accompanying documentation, in appropriate form and substance and with ENGINEER's recommendation and notice of acceptability, the amount recommended by ENGINEER will become due and will be paid by OWNER to CONTRACTOR.

Preliminary Objections, 6/4/19, at Exhibit 1 (General Conditions, Art. 14.13). Plainly, no such final inspection occurred here, nor did an engineer recommend that FWH pay the remainder of the contract price. Simply naming Payment Application No. 2 a "final payment" does not bring Article 5.2 into play.

It is plain to me that the Majority's conclusion that "CASPA applies because (1) FWH anticipatorily repudiated the construction contract, (2) Tedesco demanded final payment for its lost overhead and profits, and (3) FWH refused to pay the demanded sum[,]" completely misapprehends the

parameters of CASPA. **See** Majority Opinion at 20. The litigation *sub judice* does not involve the non-payment of an invoice for performance under a construction contract. Therefore, CASPA damages do not apply to the award for lost profits and overhead resulting from FWH's anticipatory repudiation.

Based on the foregoing, I would hold that the trial court erred in molding the verdict to add CASPA damages and would instead vacate that portion of the award.

Judges King and Beck join this Dissenting Opinion.

Judge Sullivan concurs in the result.